**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputy Attorneys General
Indianapolis, Indiana

FILED

Apr 14 2014, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: J.J. and A.J. (Minor Children) and | ) ) ) ) |
| S.J. (Father), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )     No. 49A04-1309-JT-465 |
| | ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Roseanne Ang, Magistrate
Cause Nos. 49D09-1303-JT-11779 and 49D09-1303-JT-11780

April 14, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

S.J. ("Father") appeals the involuntary termination of his parental rights to his minor children, J.J. and A.J. [1] We affirm.

## Facts and Procedural History

In its termination order, dated August 26, 2013, the trial court made the following relevant findings of fact: [2]

> 1.     J.J. was born on December 2, 2006.  A.J. was born on January 21, 2009.  S.J. is the father of J.J. and A.J.

> 2.     On February 9, 2011, the DCS filed a petition alleging J.J. and A.J. to be Children In Need of Services (CHINS)….  The specific allegations stated;

>> On or about February 8, 2011, the Department of Child Services (DCS) determined, by its Family Case Manager (FCM) Kortnie Lawrence, the children to be in need of services because their parents, Mother and Father, have failed to and/or are unable to provide the children with a safe and appropriate living environment.  Mother was arrested and incarcerated for violation of her probation and her release date is unknown.  Father lacks housing, employment, and a stable source of income with which to provide for the children.  He also admitted to recent marijuana use.  The children's maternal grandmother does not believe that she is able to care for the children due to medical reasons, and Mother stated that it is in the children's best interests to be placed in foster care until her release from jail.  Due to the lack of an appropriate caregiver for the children and the parents' inability to meet the children's needs, the coercive intervention of the Court is necessary to ensure their safety and well[-]being.

> 3.     At the initial hearing conducted on February 9, 2011, J.J. and A.J. were detained and placed outside of the home.  At this hearing, Father informed the CHINS Court that he was attempting to get his living situation in

---

[1] M.R. ("Mother") voluntarily terminated her parental rights and is not a party to this appeal.

[2] We note that the trial court refers to the parties by their full names.  We use "Father," "Mother," "J.J.," and "A.J." where appropriate.

order, did not have any family support and believed that the children were best placed in foster care[.]

4. Based on Father's willingness to engage in services to reunify with his children, the DCS made referrals for Father to engage in a number of services prior to the children being found in need of services. In March of 2011, FCM [Korina] Galang made referrals for Father to engage in home based counseling, a substance abuse evaluation and random screens.

5. Father submitted to a substance abuse evaluation at Salvation Army Harbor Lights, which recommended that he engage in an intensive outpatient treatment program.

6. While not consistent with his participation, Father was engaged in the referred services from March of 2011, until he was arrested in July of 2011. During this period of time, Father struggled financially and had trouble paying rent for the family residence. The family was facing eviction after establishing a residence for a few months.

7. Father was on probation during the course of the CHINS action for a robbery conviction which occurred in 2008. Father was incarcerated on this conviction until August 13, 2010.

8. In July of 2011, Father was arrested for probation violation, possession of cocaine, possession of marijuana and possession of paraphernalia. Cocaine, marijuana and a scale were found in the family residence at the time of Father's arrest. J.J. and A.J. were visiting with Father at the family residence immediately before his arrest.

9. At the time of Father's arrest, he had not successfully completed any of the services referred by the DCS and had not addressed his instability of housing or use of illicit substances.

….

11. On September 20, 2011, the Court proceeded to disposition as to Father. Father was ordered to complete a number of items which included participating in and following the recommendations of a program of home-based counseling, substance abuse assessment, domestic violence assessment and submission of random drug/alcohol screens. On this same date, the Court

formally ordered J.J. and A.J. removed from Father's care and ordered their continued placement outside of Father's home.

12.     Father has been incarcerated since July of 2011 and is not scheduled to be released until November 19, 2015. This release date includes an additional 85 days which [were] added after Father was involved in an altercation while incarcerated.

13.     Father has not seen J.J. and A.J. for approximately two years and has not [had] contact with them since his incarceration.

14.     J.J. and A.J. have been placed together in their pre-adoptive foster home for approximately two years. The foster parents are meeting the children's needs and the children are doing well in their care.

Appellant's App. at 24-26.

Based upon these findings of fact, the trial court concluded that: (1) J.J. and A.J. have been removed from Father's care for at least six months under a dispositional decree; (2) there is a reasonable probability that the conditions that resulted in the removal of the children and their continued placement outside Father's home will not be remedied; (3) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of both children; (4) termination of the parent-child relationship between Father and both children is in the best interests of the children; and (5) DCS has a satisfactory plan for the care and treatment of the children, which is adoption. Accordingly, the trial court determined that the DCS had proven the allegations of the petition to terminate parental rights by clear and convincing evidence and therefore terminated Father's parental rights. Father now appeals. Additional facts will be provided as necessary.

4

## Discussion and Decision

"The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated to the child's interests" in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009).

Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

(2) The petition must allege:

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

5

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id*. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id*. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied.*

6

Father asserts that DCS presented insufficient evidence to support the trial court's conclusions that there is a reasonable probability that the conditions that resulted in the children's placement outside of the home will not be remedied and that the continuation of the parent-child relationship poses a threat to the children's well-being. Father also contends that the trial court clearly erred in concluding that termination is in the best interests of the children.[3] We address his arguments in turn.

**Reasonable Probability that Conditions will not be Remedied**

Because DCS is required to prove either that there is a reasonable probability that the conditions resulting in the children's placement outside of the home will not be remedied, *or* that the continuation of the parent-child relationship poses a threat to the children's well-being, we need not address both. *See In re W.B.*, 772 N.E.2d 522, 531 (Ind. Ct. App. 2002). In considering whether the conditions that led to the removal will not be remedied, we have explained,

> When deciding whether there is a reasonable probability that the conditions leading to a child's removal will not be remedied, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. Additionally, a court may consider not only the basis for a child's initial removal from the parent's care, but also any reasons for a child's continued placement away from the parent. The court may also consider the parent's habitual patterns of conduct, as well as evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. Additionally, the court may

---

[3] Father does not challenge the trial court's conclusion that the children have been removed from him for at least six months under a dispositional decree, so we will not address that conclusion. Further, although Father mentions the trial court's conclusion that DCS has a satisfactory plan for the children's care and treatment, he offers no cogent or specific argument challenging that conclusion, so we will likewise not address that conclusion. *See A.D.S. v. Indiana Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013) (failure to support claim with cogent argument results in waiver on appeal), *trans. denied*.

7

consider any services offered by the DCS to the parent and the parent's response to those services.

*In re D.K.*, 968 N.E.2d 792, 798 (Ind. Ct. App. 2012) (citations and quotation marks omitted).

Here, the children were initially removed from the home because Mother was incarcerated and Father was without a stable income and unable to provide housing or an appropriate living environment for the children. At the time the CHINS petition was filed, Father admitted to recent drug use and also agreed that, due to his inability to attain stable housing, the children were best placed in foster care. The record indicates that, following that initial removal, Father failed to consistently cooperate with DCS or participate in the plethora of services offered. Father admits to continued substance abuse problems, and, since removal, he has not been able to remain drug-free unless incarcerated. Indeed, during the pendency of the CHINS proceeding, Father was arrested and imprisoned for class C felony dealing in marijuana and is currently serving a prison sentence with a release date in 2015. At the time of his dealing offense, Father had just been released from incarceration and was serving probation following a two-year prison term for class C felony robbery. Moreover, additional prison time was added to Father's current sentence due to his behavior while incarcerated.

This record is replete with evidence of Father's habitual patterns of poor decisionmaking, and, despite repeated opportunities, Father continues to fail to demonstrate that he is willing or able to provide for his children. Based upon Father's inability to cease using controlled substances, to lead a law-abiding life, and to provide a safe and stable home

8

for J.J. and A.J., we cannot say that the trial court clearly erred in concluding that there is a reasonable probability that the conditions leading to the children's removal will not be remedied. Father's arguments to the contrary are invitations for us to reweigh the evidence, which we cannot do. *See D.B.*, 942 N.E.2d at 871.

### Best Interests

Father maintains that the trial court clearly erred when it concluded that termination of his parental rights is in the children's best interests. In determining the best interests of a child, the trial court must look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "In so doing, the trial court must subordinate the interests of the parent to those of the child." *Id.* The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* We have previously held that the recommendations of the case manager and court-appointed advocate, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to establish by clear and convincing evidence that termination is in the child's best interests. *Id.*

Here, FCM Korina Galang testified that she believed that termination of Father's parental rights is in the children's best interests. Galang stated that, prior to his incarceration, Father continued to have unstable living conditions, lacked permanent employment, and failed to consistently participate in DCS services to remedy those issues. She stated that the children had already been in foster care for two years and that it would not be in the children's best interests to remain in foster care while waiting for Father to be released from

9

prison to see if he could stabilize his life. Galang testified that the children were in need of the permanency of adoption because long-term foster care can be damaging to children as they get older.

Similarly, the children's guardian ad litem, Lindsay Hakes, also recommended termination of Father's parental rights as being in the children's best interests. Hakes specifically noted Father's lack of progress with DCS services as well as his continued incarceration as factors in her recommendation. Hakes stated that she observed that both children were extremely bonded with their foster family and that the children had expressed anxiety and insecurity regarding the uncertainty of their current long-term foster care situation. Hakes testified that the foster family intends to adopt the children and that the permanency of adoption is in the children's best interests. Hakes opined, "I think they need and deserve permanency now and they've been waiting a long time." Tr. at 57.

This case is a prime example of when the court need not wait until the children are harmed irreversibly before terminating the parent-child relationship. *See J.S.*, 906 N.E.2d at 236. As our supreme court recently reiterated, children have a paramount need for permanency and cannot wait indefinitely for their parents to work toward preservation or reunification. *In re E.M.*, 4 N.E.3d 636, ___ (Ind. 2014). Under the circumstances presented, the trial court's conclusion that termination of Father's parental rights is in the children's best interests is supported by clear and convincing evidence. Father's arguments to the contrary are again improper invitations for us to reweigh the evidence in his favor,

which we cannot do. *See D.B.*, 942 N.E.2d at 871. We affirm the trial court's decision to terminate Father's parental rights to J.J. and A.J.

Affirmed.

BAKER, J., and BARNES, J., concur.